UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HANFORD CHALLENGE, UNITED ASSOCIATION OF PLUMBERS AND STEAMFITTERS LOCAL UNION 598, and THE STATE OF WASHINGTON, | NO:  4:15-CV-5086-TOR |
| Plaintiffs, | ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| ERNEST MONIZ, in his official capacity as Secretary, UNITED STATES DEPARTMENT OF ENERGY, and WASHINGTON RIVER PROTECTIONS SOLUTIONS, LLC., | |
| Defendants. | |

BEFORE THE COURT is the United States Department of Energy and Secretary Ernest J. Moniz's Motion for Judgment on the Pleadings (ECF No. 110). This matter was heard with oral argument on October 12, 2016.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 1

1    Meredith A. Crafton, Richard Webster, Richard A. Smith, and Blythe H.

2  Chandler  appeared on behalf of Plaintiffs Hanford Challenge and United

3  Association of Plumbers and Steamfitters Local Union 598.  John A. Level, Kelly

4  T. Wood, and William R. Sherman appeared on behalf of Plaintiff State of

5  Washington.  Elizabeth B. Dawson, Mark A. Nitczynski, and Sheila A. Baynes

6  appeared on behalf of Defendants United States Department of Energy and

7  Secretary Ernest J. Moniz.  J. Chad Mitchell, Maureen L. Mitchell, and Stephen B.

8  Cherry appeared on behalf of Defendant Washington River Protection Solutions,

9  LLC.  The Court has reviewed the briefing and the complete file, heard from

10  counsel, and is fully informed.

11                                              BACKGROUND

12    This is a consolidated action brought under the citizen suit provision of the

13  Solid Waste Disposal Act, § 7002(a)(1)(B), amended as the Resource Conservation

14  and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).

15    Plaintiffs Hanford Challenge and United Association of Plumbers and

16  Steamfitters Local Union 598 (collectively, "Citizen Plaintiffs") filed a Complaint

17  against Defendants United States Department of Energy and Secretary Ernest J.

18  Moniz ("DOE") and Washington River Protection Solutions, LLC ("WRPS")

19  (collectively, "Defendants") on September 2, 2015, in *Hanford Challenge and*

20  *United Association of Plumbers and Steamfitters Local Union 598 v. Ernest Moniz,*

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 2

1    *et al.*, 4:15-CV-5086-TOR, *see* ECF No. 1.  That same day, Plaintiff State of

2    Washington ("State") filed a similar action against the same defendants in *State of*

3    *Washington v. Ernest Moniz, et al.*, 4:15-CV-5087-TOR, *see* ECF No. 1.  The

4    parties to both actions filed a Joint Motion to Consolidate which the Court granted

5    and consolidated the actions as 4:15-CV-5086-TOR on January 22, 2016.  *See* ECF

6    Nos. 33, 35 in Case No. 4:15-CV-5086-TOR.

7         Generally, Citizen Plaintiffs and the State (collectively, "Plaintiffs") allege

8    that Defendants past and present storage, handling, and treatment of hazardous

9    waste at the Hanford Nuclear Site present an imminent and substantial

10   endangerment to human health or the environment.  *See* ECF No. 1 in Case No.

11   4:15-CV-5086-TOR; ECF No. 1 in Case No. 4:15-CV-5087-TOR.  Plaintiffs seek

12   declaratory and injunctive relief directing Defendants to modify their practices and

13   institute protective measures to avert peril to Hanford site workers.

14        On August 23, 2016, the DOE filed the instant motion for judgment on the

15   pleadings regarding all claims asserted in the State's Complaint (ECF No. 1 in

16   Case No. 4:15-CV-5087-TOR), arguing that the State lacks standing as *parens*

17   *patriae* and has failed to demonstrate standing based on any alleged injuries to

18   itself, sufficient to satisfy Article III.  ECF No. 110.  The DOE asks this Court to

19   dismiss the State's Complaint for lack of subject matter jurisdiction.  *Id.*

20   Defendant WRPS joins in the DOE's motion only as to the DOE's arguments

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 3

1    regarding the States' alleged failure to assert an injury to a sufficiently substantial

2    portion of its population and lack of Article III standing.  ECF No. 111.  The State

3    argues that it is not barred by prudential limits on *parens patriae* suits because

4    Congress explicitly authorizes the State to sue the United States under the RCRA

5    to vindicate its broad, public interest.  *See* ECF No. 112 at 2-3.  In the alternative,

6    the State argues that it has standing because Citizen Plaintiffs' uncontested

7    standing satisfies the State's Article III requirement.  *Id.*

8                                    **DISCUSSION**

9        **A. Standard of Review**

10       Motions for judgment on the pleadings are governed by Federal Rule of

11   Civil Procedure 12(c).  Rule 12(c) provides that a party may move for judgment on

12   the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay

13   trial."  Fed. R. Civ. P. 12(c).  This standard is "functionally identical" to the

14   standard applicable to a Rule 12(b) motion.  *See, e.g.*, *Cafasso, United States ex*

15   *rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)

16   (equating the standard for deciding a Rule 12(c) motion as the same as a Rule

17   12(b)(6) motion); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.

18   1989) (noting that "the same standard of review applicable to a Rule 12(b) motion

19   applies to its Rule 12(c) analog").

20

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 4

A party may object to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) at any stage in the litigation.  *See also* Fed. R. Civ. P. 12(h)(3).  Rule 12(h)(3) instructs that if the court determines at any time that it lacks jurisdiction of the subject matter, the court shall dismiss the action.  To that end, a party may object to subject matter jurisdiction either facially or factually.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

Here, Defendants facially challenge the State's complaint, alleging that the State lacks standing under the *parens patriae* doctrine and Article III.  Thus, the Court must draw all reasonable inferences in favor of the State and accept the States' factual allegations as true.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## B. Whether the State is Authorized to Sue the United States

It is well settled that standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  That is, in addition to Article III standing requirements, federal jurisdiction may also be limited by certain prudential

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 5

1   limitations.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  These limitations are

2   characterized as "judicially self-imposed limits on the exercise of federal

3   jurisdiction" which Congress may abrogate when it enacts a statute to authorize a

4   private cause of action.  *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984),

5   abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components*,

6   Inc., 134 S. Ct. 1377 (2014)).

7        In other words, "Congress may grant an express right of action to persons

8   who otherwise would be barred by prudential standing rules" as long as Article III

9   standing requirements are satisfied.  *Warth*, 422 U.S. at 501.  Moreover, such

10  persons "may have standing to seek relief on the basis of the legal rights and

11  interests of others[.]"  *Id.*  Further yet, "Congress may, by legislation, expand

12  standing to the full extent permitted by Art. III, thus permitting litigation by one

13  who otherwise would be barred by prudential standing rules."  *Gladstone Realtors*

14  *v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citation omitted).

15        **a.  *Resource Conservation and Recovery Act of 1976***

16        The citizen suit provision of the RCRA authorizes "any person [to]

17  commence a civil action on his own behalf . . . against any person, including the

18  United States . . . who has contributed or who is contributing to the past or present

19  handling, storage, treatment, transportation, or disposal of any solid or hazardous

20  waste which may present an imminent and substantial endangerment to health or

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 6

1    the environment . . . ." 42 U.S.C. § 6972(a)(1)(B); *see also* § 6903(15) (defining

2    "person" to include a state).  Moreover, when Congress uses the phrase "any

3    person" and the intent is clear, Congress intends to expand standing broadly to the

4    fullest extent permitted by Article III.  *See Bennett*, 520 U.S. at 165 (citation

5    omitted).  Simply put, the RCRA explicitly grants states the authority to sue the

6    United States.  *See id.*; *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 614

7    n.5 (1992) ("States may sue the United States under the citizen-suit section[].")

8    (citations omitted).

9            Here, the DOE argues that the State is precluded from proceeding with its

10   claim against the United States given the Supreme Court's holding in

11   *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).[1]  ECF Nos. 110 at 10; 156

12   at 2.

13           While the state, under some circumstances, may sue in that capacity
             for the protection of its citizens [], it is no part of its duty or power to
14           enforce their rights in respect of their relations with the federal
             government. In that field it is the United States, and not the state,

15

16   [1]    The DOE also relies on dicta in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*,

17   458 U.S. 592, 602 (1982) wherein the Supreme Court cites *Mellon* and stated that

18   "[a] State does not have standing as *parens patriae* to bring an action against the

19   Federal Government."  *Snapp*, 458 U.S. at 610 n.16.

20

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 7

which represents them as *parens patriae*, when such representation becomes appropriate. . . .

*Mellon*, 262 U.S. at 485–86 (citation omitted).  The DOE also argues that this bar is not a prudential standing limit and, therefore, cannot be overridden by Congress. ECF No. 156 at 2.  Conversely, the State argues that a state is permitted to sue the federal government to assert its rights under federal law, in contrast to prohibitory challenges to the operation of federal law, under the doctrine of *parens patriae*. ECF No. 112 at 10.

At the outset, neither party has set forth cases in which a state was permitted or precluded from pursuing a RCRA claim against the United States, as *parens patriae,* on behalf of its residents.  However, in contrast to the cases cited by the DOE rejecting *parens patriae* standing, *see* ECF No. 110 at 10-11, the Court notes other instances where courts have recognized exceptions to the *Mellon* holding. *See, e.g.*, *American Rivers v. F.E.R.C.,* 201 F.3d 1186, 1205 (9th Cir. 1999); *Sisseton–Wahpeton Sioux Tribe of Lake Traverse Indian Res., North Dakota and South Dakota v. United States,* 90 F.3d 351, 353-54 (9th Cir. 1996); *Maryland People's Counsel v. F.E.R.C.*, 760 F.2d 318, 322 (D.C. Cir. 1985) (stating that there is "no doubt that congressional elimination of the rule of *Massachusetts v. Mellon* is effective").

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 8

1    Moreover, the Court cannot ignore the Supreme Court's 2007 decision in

2  *Massachusetts v. E.P.A.*, wherein the majority acknowledged a state's ability to sue

3  the federal government under a federal statute in seeking to protect its quasi-

4  sovereign interests concerning greenhouse gas emissions. 549 U.S. 497, 519-20

5  (2007) (given the state's statutory procedural right to challenge the federal

6  agency's action and the state's interest in protecting its quasi-sovereign interests,

7  the state is "entitled to special solicitude in our standing analysis.")

8    The Court finds *Mellon* inapplicable because here, Congress has overridden

9  any *parens patriae* prudential standing limitation.  To be clear, the Court does not

10  suggest that the RCRA confers standing to the State, or that the State has the right

11  to bring this action in *parens patriae* because it is not challenging the operation of

12  federal law.  Rather, the Court disagrees with the DOE's assertion that the *Mellon*

13  holding is not a prudential standing limit.   *Parens patriae* standing limitations are

14  exactly that—a "judicially self-imposed limit[] on the exercise of federal

15  jurisdiction." *Allen,* 468 U.S. at 751.  *See, e.g.*, *Massachusetts v. E.P.A.,* 549 U.S.

16  at 540 n.1 (Roberts, C.J., dissenting) (describing the "requirements for parens

17  patriae standing" as "prudential"); *Serv. Emps. Int'l Union Health & Welfare Fund*

18  *v. Philip Morris Inc*., 249 F.3d 1068, 1073 (D.C. Cir. 2001) ("[T]he doctrine of

19  *parens patriae* is merely a species of prudential standing."); *Maryland People's*

20

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 9

1   *Counsel,* 760 F.2d at 321 (*parens patriae* standing limitations are "prudential . . .

2   element[s] that the courts must dispense with if Congress so provides").

3          Next, the DOE argues that even if the Court determines that the State is not

4   barred from bringing a *parens patriae* suit under the RCRA, the action should be

5   dismissed because Congress tasked the DOE with regulating worker health and

6   safety.  ECF No. 203 at 8.  The Court finds little merit to the DOE's argument that

7   the State is barred from asserting its RCRA claim because the State seeks to

8   interfere with federal powers.  ECF No. 156 at 3-4.  Rather, the Court finds that the

9   explicit language of the RCRA inexorably authorizes the State to do just that. *See*

10  42 U.S.C. § 6972(a)(1)(B).

11         Accordingly, the State's action is permitted to proceed, as long as it satisfies

12  Article III standing requirements, because Congress has authorized the State to

13  bring this RCRA action in *parens patriae*.

14      **C. Whether the State has Sufficient Standing**

15         The State argues that the Court need not toil with determining whether the

16  State has sufficient standing because Citizen Plaintiffs' standing is uncontested.

17  ECF No. 112 at 3-5.  The State urges the Court to heed the "standing for one is

18  standing for all" doctrine.  *Id*.  The Court finds it inappropriate to do so.

19         The "standing for one is standing for all" approach does not prohibit a

20  district court from analyzing a plaintiff's standing even if it finds that another

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 10

1    plaintiff has sufficient standing.  Indeed, it may be inappropriate to apply the

2    doctrine where a fee shifting statute applies or where multiple parties without

3    standing would complicate the just, speedy, and inexpensive determination of the

4    proceeding.  None of the State's cited cases forbid the Court from assessing the

5    State's standing or require the "standing for one is standing for all" approach.  *Id*.

6           It is also conceivable that the "standing for one is standing for all" approach

7    may be limited to appellate review.  *See, e.g.*, *Nat'l Ass'n of Optometrists &*

8    *Opticians LensCrafters v. Brown,* 567 F.3d 521, 523 (9th Cir. 2009) ("As a general

9    rule, in an injunctive case *this court* need not address standing of each plaintiff if it

10   concludes that one plaintiff has standing." (emphasis added and citation omitted));

11   *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)

12   ("Where the legal issues *on appeal* are fairly raised by one plaintiff [who] had

13   standing to bring the suit, the court need not consider the standing of the other

14   plaintiffs." (internal quotation and citation omitted, emphasis added)).  For all of

15   these reasons, the Court analyzes the State's Article III standing in its *parens*

16   *patriae* capacity.

17                  **a.  *Standing as Parens Patriae Under Article III***

18          In order to satisfy the Article III "case" or "controversy" requirement, which

19   is the "irreducible constitutional minimum" of standing, a plaintiff must ordinarily

20   //

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 11

1  demonstrate the following:

2      First, the plaintiff must have suffered an "injury in-fact"—an invasion
       of a legally protected interest which is (a) concrete and particularized,

3      . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". .
       . . Second, there must be a causal connection between the injury and

4      the conduct complained of—the injury has to be "fairly . . . trace[able]
       to the challenged action of the defendant, and not . . . th[e] result [of]

5      the independent action of some third party not before the court." . . .
       Third, it must be "likely," as opposed to merely "speculative," that the

6      injury will be "redressed by a favorable decision."

7  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (citations omitted).

8  The party asserting federal jurisdiction must satisfy all three elements.  *Id.* at 561.

9  (citation omitted).  "[W]hen the plaintiff [such as the State, here] is not himself the

10 object of the governmental action or inaction he challenges, standing is not

11 precluded, but it is ordinarily substantially more difficult to establish."  *Id.* at 562

12 (alteration to original) (quotation and citations omitted).

13     The DOE argues, and the Court agrees, that *parens patriae* supplies a state

14 with an alternative basis for jurisdiction for purposes of Article III standing by

15 providing a means of establishing an injury where one would not otherwise exist.[2]

16 _____

17 [2]     The Court also agrees with the DOE that a statute granting a right to sue

18 does not automatically confer the injury-in-fact standing requirement.  *See* ECF
   No. 203 at 9-10; *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016) ("Article III

19 standing requires a concrete injury even in the context of a statutory violation.").

20

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 12

ECF No. 156 at 2 (citing *Connecticut v. Physicians Health Servs. of Conn.*, 287 F.3d 110, 119-20 (2d Cir. 2002)); *see also State of Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 450 (1945) (internal quotation and citation omitted) (stating that in a *parens patriae* capacity, "[courts] treat the injury to the State as proprietor merely as a makeweight"). When Congress has granted a right of action, a party "may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." *See Warth*, 422 U.S. at 501 (citations omitted).

As discussed *supra*, Congress authorized the State to bring this action under the RCRA. The Supreme Court has characterized Congress' authorization as "of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Massachusetts v. E.P.A.*, 549 U.S. at 516–17 (citing *Lujan,* 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). "In exercising this power, however, Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Id.*

In enacting the RCRA, Congress has identified the injury it seeks to vindicate as an "endangerment to health or the environment" and included states within the class of persons entitled to bring suit. 42 U.S.C. § 6972(a)(1)(B); *see*

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 13

*also* § 6903(15). In order to maintain a *parens patriae* action, "the [s]tate must articulate an interest apart from the interests of particular private parties, *i.e.*, the [s]tate must be more than a nominal party." *Snapp*, 458 U.S. at 602. Moreover, while the Supreme Court has not defined the number of residents who "must be adversely affected by the challenged behavior[,]" the "indirect effects of the injury must be considered as well in determining whether the [s]tate has alleged injury to a sufficiently substantial segment of its population." *Id.* The state must also implicate a quasi-sovereign interest in bringing the action. *Id.* In this analysis, "special solicitude" is afforded to the state, but it is not exempt from the burden of establishing each of these fundamental elements. *See Massachusetts v. E.P.A.*, 549 U.S. at 520.

The state can claim a quasi-sovereign interest in two ways: "in the health and well-being—both physical and economic of its residents in general" and "in not being discriminatorily denied its rightful status within the federal system." *Snapp,* 458 U.S. at 607. As to the former, "if the health and comfort of the inhabitants of a [s]tate are threatened, the [s]tate is the proper party to represent and defend them." *Missouri v. Illinois*, 180 U.S. 208, 241 (1901). In this capacity, "the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 14

1  shall be stripped of their forests and its inhabitants shall breathe pure air." *State of*

2  *Ga. v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907).

3      Here, the State initiated this action under the RCRA for declaratory and

4  injunctive relief to prevent endangerment to Washington workers.  The State

5  asserts that both quasi-sovereign interests are implicated.  *See* ECF No. 112 at 11-

6  17.  First, the State underscores the importance of the health and well-being of its

7  residents and its need to protect its citizens from ill effects of hazardous waste tank

8  vapors.  *See* ECF No. 112 at 6.  The State argues that Hanford workers are entitled

9  to a safe and secure workplace and, therefore, the State has an inherent and

10  fundamental sovereign interest in ensuring that all Washington workers are safe.

11  *Id.* at 15.  Second, the State asserts a quasi-sovereign interest in foreclosing

12  discriminatory denial of its rightful status within the federal system.[3]  In that vein,

13  the State seeks to secure its status within the federal system to protect its citizens

14  working at federal facilities to ensure that federal workers are not discriminated

15  against within that system.

16

17

18  [3]      The Court recognizes that the State asserted this additional interest for the

19  first time during oral argument, *see* ECF No. 203 at 17-18.  The Court declines to

20  address it here.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 15

While the DOE admits that the State has a quasi-sovereign interest,[4] it contends that the State's claimed interest is not sufficiently distinct from that of its citizens' interest. *See* ECF No. 110 at 13. Relying on the State's acknowledgment that its claims are functionally identical to the Citizen Plaintiffs', the DOE argues that the similarity illustrates that the State has not articulated an interest apart from Citizen Plaintiffs'. ECF No. 156 at 5-6.

Additionally, the DOE argues that the State has not alleged injury to a sufficiently substantial segment of its population as it is required to do. *Id.* According to the DOE, the State is merely seeking to intervene on behalf of "approximately 2,000 workers, at most, [who] are allegedly affected out of a State population of over several million" and any alleged indirect effect on the broader population of Washington is unavailing.

In its Complaint, the State argues that "[t]he health and safety of state citizens and residents working at the Hanford site are threatened by Defendants' storage, handling, and treatment of hazardous wastes in violation of RCRA . . . ." ECF No. 1 at ¶ 9(b) in Case No. 4:15-CV-05087-TOR. The State also argues that

---

[4]    In its motion, the DOE argued that the State's interests do not constitute quasi-sovereign interests, *see* ECF Nos. 110 at 13; 156 at 1, however, the Court notes that the DOE seemingly conceded the same, *see* ECF No. 203 at 11.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 16

it has a "direct and tangible interest in the health, safety, and welfare of its residents, which are threatened by Defendants' actions." *Id.* The State asserts that it does not seek to vindicate private interests of a small segment of its population; rather, the State asserts that it has a broader, public interest in ensuring that all who work within its borders—including current and future Hanford workers—enjoy a safe workplace. *See id.* at ¶¶ 4, 17; ECF No. 112 at 2-3. The State also argues that the RCRA is meant to protect public interests and is void of any limiting language as to the extent of the population that need be affected. ECF No. 112 at 12-13. Moreover, the State argues that several thousand workers are certified to enter the tank farms, which does not account for additional workers who have been exposed to tank vapors outside of the tank farms. *Id.* at 15. The indirect harm, the State alleges, thrusts well into the future, given that the Hanford tank waste retrieval is expected to take more than four decades to complete. *Id.* at 16-17.

At this stage, the Court must accept all of the State's allegations in its Complaint as true and construe the State's allegations in a light most favorable to the State. *See Wolfe*, 392 F.3d at 362. Accepting the State's factual allegations as true, the Court first finds that the State has adequately asserted at least one quasi-sovereign interest—protection of the health and well-being of Washington residents.

The Court also disagrees with the DOE that the State's lawsuit is focused too narrowly to support standing under *parens patriae*. Instead, the Court finds that the State has demonstrated injury to a sufficient segment of its population to dispel any notion that it is merely a nominal party, in part, because there is not "any definitive limits on the proportion of the population of the State that must be adversely affected." *See Snapp* 458 U.S. at 607. Conservatively, even if only a couple thousand Hanford workers are potentially exposed to toxic waste vapors each year, *see* ECF No. 113-1 at 17, those workers are not the only persons who will be affected by the DOE's actions. Future workers in months and years to come, as well as the members of the community, will inevitably be adversely affected. Based on this reasoning and because there is no required quantification as to the number of persons who must be affected, the Court cannot agree with the DOE's assertion that the alleged injury affects an insufficient (insignificant) segment of the population.

Likewise, the Court finds that the State is more than a nominal party because the State has a far broader interest (than that of its citizens) in ensuring worker safety throughout Washington and the protection of future Hanford workers. *Id.* at 607 (proper to consider the "indirect effects of the injury"); *see also* ECF No. 1 at 4, 17 in Case No. 4:15-CV-05087-TOR. A private action by Citizens Plaintiffs may not produce complete relief for all of the persons endangered—both current

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 18

and future—but for which the State's inherent and fundamental sovereign interests would represent.

In sum, this court finds that the State's RCRA claim should not be dismissed for lack of standing because the State has *parens patriae* standing under Article III. Therefore, the DOE's motion for judgment on the pleadings, and WRPS' joinder thereto, are **DENIED**.

Accordingly, **IT IS HEREBY ORDERED**:

1. United States' Motion for Judgment on the Pleadings (ECF No. 110) is **DENIED**; and

2. Defendant Washington River Protection Solutions, LLC's Joinder in United States Defendants' Motion for Judgment on the Pleadings (ECF No. 111) is also **DENIED.**

The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** November 3, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS ~ 19