UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HANFORD CHALLENGE, UNITED ASSOCIATION OF PLUMBERS AND STEAMFITTERS LOCAL UNION 598, and THE STATE OF WASHINGTON, | NO: 4:15-CV-5086-TOR |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE |
| v. | |
| ERNEST MONIZ, in his official capacity as Secretary, UNITED STATES DEPARTMENT OF ENERGY, and WASHINGTON RIVER PROTECTIONS SOLUTIONS, LLC, | |
| Defendants. | |

BEFORE THE COURT are the State of Washington's Motion for Preliminary

Injunction (ECF No. 48), Citizen Plaintiffs' Motion for Preliminary Injunction (ECF

Nos. 74, 75), United States' Motion to Strike or for Leave to File Supplemental

Declaration (ECF No. 193) and Motion to Expedite (ECF No. 194), and Washington

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 1

River Protection Solutions, LLC's Objection to Plaintiffs' Reply Memorandum and Other Evidence (ECF No. 192) and Motion to Expedite (ECF No. 191). These matters were heard with oral argument on October 12, 2016.

Meredith A. Crafton, Richard Webster, Richard A. Smith, and Blythe H. Chandler appeared on behalf of Plaintiffs Hanford Challenge and United Association of Plumbers and Steamfitters Local Union 598. John A. Level, Kelly T. Wood, and William R. Sherman appeared on behalf of Plaintiff State of Washington. Elizabeth B. Dawson, Mark A. Nitczynski, and Sheila A. Baynes appeared on behalf of Defendants United States Department of Energy and Secretary Ernest J. Moniz. J. Chad Mitchell, Maureen L. Mitchell, and Stephen B. Cherry appeared on behalf of Defendant Washington River Protection Solutions, LLC. The Court has reviewed the briefing and the complete file, heard from counsel, and is fully informed.

## BACKGROUND

Plaintiffs Hanford Challenge and United Association of Plumbers and Steamfitters Local Union 598 ("Union 598") (collectively, "Citizen Plaintiffs") and Plaintiff State of Washington ("State") bring this action under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(B) against Defendants United States Department of Energy and Secretary Ernest J. Moniz ("United States") and Washington River Protection Solutions, LLC ("WRPS") (collectively, "Defendants").

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 2

Citizen Plaintiffs and the State (collectively, "Plaintiffs") allege that Defendants have engaged in conduct related to Defendants' storage, handling, and treatment of hazardous waste at Hanford Site resulting in an imminent and substantial endangerment to human health and the environment.  To assess the risks posed by hazardous waste and vapors emanating therefrom, WRPS commissioned an investigation in 2014, which resulted in a Tank Vapors Assessment Team Report ("TVAT Report").  *See* ECF Nos. 48 at 12; 118 at 20.   The TVAT Report recommends 47 actions to mitigate various inadequacies at Hanford.  *See* ECF No. 53-6 at 255-260.

Plaintiffs do not dispute that Defendants are undertaking remedial and investigatory measures to address the recommendations.  *See* ECF Nos. 48 at 17; 118 at 18-25.  Rather, Plaintiffs assert that Defendants "do not have a handle on how, where, and in what concentrations workers are being exposed to chemical vapors," have failed to set milestones for completion, and are simply not doing enough.  *See* ECF Nos. 48 at 32; 75 at 13-14.  Plaintiffs allege that more than fifty workers were exposed to toxic vapors between April and June 2016.  *See* ECF Nos. 48 at 25, 30; 75 at 22-23.  To prevent further harm, Plaintiffs seek an injunction directing Defendants to further modify their practices and maintain certain protective measures to avert endangerment to Hanford employees.

//

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 3

**DISCUSSION**

Preliminary injunctions are an "extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008).  To obtain a preliminary injunction, a movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury if the injunction does not issue, (3) that a balancing of the hardships weighs in the movant's favor; and (4) that a preliminary injunction will advance the public interest.  *Winter*, 555 U.S. at 20 (citation omitted). A movant bears the burden to establish all four factors by a clear showing.  *See Garcia v. Google, Inc*., 786 F.3d 733, 40 (9th Cir. 2015); *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted).

Generally, a mandatory injunction orders a party to "take action," while a prohibitory injunction "restrains" a party from taking further action to preserve the status quo.  *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 484 (1996).  Both mandatory and prohibitory injunctions may be issued under the RCRA.  *Id.* at 483-84.  However, mandatory injunctions are disfavored and "not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . ." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks and citation omitted).  Courts should deny a mandatory injunction unless the movant can "establish that the law and facts *clearly*

//

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 4

*favor* [its] position, not simply that [it] is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original).

Here, the parties disagree as to whether Plaintiffs seek a mandatory or prohibitory injunction. Plaintiffs request the Court to compel Defendants to expand a vapor control zone and deploy various monitoring equipment, and enjoin Defendants from withdrawing a supplied air mandate. Accordingly, the requested relief is both mandatory and prohibitory.

**A. Likelihood of Success**

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia*, 786 F.3d at 740. The primary purpose of the RCRA is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig*, 516 U.S. at 483 (quoting 42 U.S.C. § 6902(b)). Plaintiffs must prove that they are likely to succeed in showing (1) the existence of a solid or hazardous waste; (2) that Defendants handled, stored, treated, transported, or disposed of; and (3) that may present an imminent and substantial endangerment. *See* 42 U.S.C. § 6972(a)(1)(B).

Defendants admit that Hanford tanks contain and store solid or hazardous waste, and that vapors released from the tanks originate from the stored waste. *See* ECF Nos. 23 at ¶¶ 44, 48; 24 at ¶¶ 44, 47; 118 at 50. Defendants also admit that

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 5

they are tasked with handling, transferring, and/or disposing of that waste.  *See* ECF Nos. 23 at ¶ 40; 118 at 11-13.  However, WRPS argues that the RCRA does not support Plaintiffs' claim because tank vapors are "uncontained gaseous material" not classified as a "solid or hazardous waste" under the RCRA.  *See* ECF No. 118 at 44-52.

Hazardous waste is characterized as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may" cause, contribute to, or "pose a substantial present or potential hazard" to human health.  42 U.S.C. § 6903(5); *see also Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1024 (9th Cir. 2014) ("*BNSF II*").  In turn, "solid waste" is described in part as ". . . sludge from a waste treatment plant . . . or other discarded material, including solid, liquid, semisolid, or *contained gaseous material* . . . ." 42 U.S.C. § 6903(27).

Disposal of hazardous waste under the RCRA occurs "where the solid waste is *first* placed into or on any land or water and is *thereafter* emitted into the air."  *BNSF II*, 764 F.3d at 1024 (emphasis in original) (internal quotations omitted).  In *BNSF II*, the Ninth Circuit held that train emissions spewing diesel exhaust into the air do not fall under the RCRA because it does not dispose of solid waste, nor originate from solid waste before it is emitted.  *Id*. at 1030  It follows that diesel exhaust is instead simply an "uncontained gaseous material" falling outside the RCRA scope.

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 6

Conversely, unlike diesel train exhaust, vapors emitted in the air at Hanford Site emanate from solid waste (or a combination of "solid, liquid, semisolid, or contained gaseous material") contained within and leaking from storage tanks.  *See* § 6903(27).  The RCRA clearly governs disposal of that waste.  *See BNSF II*, 764 F.3d at 1024 ("We therefore conclude that 'disposal' occurs where the solid waste is first placed 'into or on any land or water' and is thereafter 'emitted into the air.'"); *Ctr. for Cmty. Action & Envtl. Justice v. Union Pac. Corp*., No. CV 11-08608 SJO SSX, 2012 WL 2086603, at *8 (C.D. Cal. May 29, 2012) (stating that the "RCRA covers the vapors that emanate from solid waste and the air emissions that result"), *aff'd sub nom. BNSF II*.[1]  Accordingly, the Court rejects WRPS's constrained interpretation of the RCRA, and finds that vapors emitted from Hanford tank waste fall within the RCRA.

The remaining issue is whether Defendants' conduct "may present an imminent and substantial endangerment."  *See* 42 U.S.C. § 6972(a)(1)(B).  An

---

[1]    WRPS relies on *Northern Illinois Gas Co. v. City of Evanston, Ill.*, 162 F. Supp. 3d 654, 663 (N.D. Ill. 2016).  There, the court stated that methane gas released from pipelines cannot ground a RCRA claim.  However, the court also held that a claim *is* permissible on the "discharge of a RCRA solid waste that breaks down into methane gas . . . ." *Id.*

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 7

endangerment is "imminent" if it "threaten[s] to occur immediately." *Meghrig*, 516 U.S. at 485.  Actual harm is not required as long as there is "a threat which is present *now*, although the impact of the threat may not be felt until later." *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) (emphasis in original).  Moreover, the "endangerment must be substantial or serious, and there must be some necessity for the [injunctive] action." *Id.*

Here, Plaintiffs argue that Hanford employees have suffered from vapor related incidents dating back to the late 1970s through July 2016, arguing that significant harm will continue absent an injunction.  *See* ECF No. 48 at 32. Plaintiffs first ask the Court to prevent Defendants from eliminating the requirement that all Hanford employees must use supplied air within the perimeter fence lines, which includes the vapor control zone ("VCZ").  *See* ECF Nos. 48 at 7-8; 75 at 27-28.  Even prior to this lawsuit and the TVAT Report, however, WRPS has always permitted and "actively promot[ed]" employees to voluntarily request supplied air within the tank farms; or, if a respiratory upgrade was not appropriate, the employees could choose to not perform that task.  *See* ECF No. 118 at 22.

Nevertheless, WRPS began requiring employees to use supplied air at single-shell tank farms as of December 2014, and at double-shell tank farms since July 11, 2016.  *Id.* at 55.  As of August 3, 2016, Defendants voluntarily agreed to implement mandatory use of supplied air at all times within the perimeter fence lines of all tank

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 8

farms.  *See* ECF Nos. 106 at 3-4; 181 at 21-22; 118 at 55.  Defendants and the Hanford Atomic Metal Trades Council ("HAMTC") memorialized that agreement on August 31, 2016, in a Memorandum of Agreement.  *See* ECF No. 125-1 at 28-29. Since that time, Hanford employees have been required to use self-contained breathing apparatus ("SCBA").  Plaintiffs request a prohibitory injunction to prevent Defendants from vacating the supplied air mandate prior to trial.

Plaintiffs also seek a mandatory injunction ordering Defendants to expand the current VCZ by 200 feet during waste-disturbing activities, from the perimeter fence line of the affected tank farms, and to barricade all roads and access points to prevent entry into the expanded zone.  *See* ECF Nos. 48 at 7-8; 75 at 27-28. Plaintiffs argue that expansion is necessary because two individuals "reported an odor several hundred yards away" from a tank farm on April 28, 2016,[2] and because the models WRPS utilizes to establish its VCZ are not capable of accurately representing short-term, near-field exposure concentrations, called bolus events.  *See* ECF Nos. 48 at 15-16; 50 at ¶¶ 24–27; 88 at 95:20-96:1.  Defendants respond that VCZ expansion is unsupported by scientific data, not recommended in the TVAT Report, and contrary to public interest because it would grossly thwart ongoing

---

[2]    Plaintiffs' expert opines that exposures could occur up to 3,300 feet beyond the current VCZ.  *See* ECF No. 50 at ¶ 37.

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 9

1  remediation efforts to remove and dispose of hazardous waste from leaking tanks.

2  *See* ECF No. 136 at 2.

3        Plaintiffs also seek a mandatory injunction requiring Defendants to install and

4  use additional monitoring and alarming equipment during waste-disturbing

5  activities, including optical gas imaging cameras, optical spectrometers, optical stack

6  monitors, and VMD (vapor monitoring and detection) integration software. *See*

7  ECF Nos. 48 at 7-8; 75 at 27-28.  WRPS responds that in some locations it has

8  already deployed that equipment and additional equipment "more robust than what

9  Plaintiffs request."  *See* ECF No. 118 at 52-54.  WRPS also argues that it is not

10  feasible to deploy the existing VMD software during waste-disturbing activities

11  because moving the equipment is impractical.  *See* ECF Nos. 118 at 54; 130 at 21.

12  WRPS avers, however, that it has already bench-scale and pilot-scale tested the

13  VMD software, which took "thousands of hours" and cost $20,000,000 to deploy.

14  Despite its efforts, WRPS contends that full implementation of the VMD software is

15  not possible to accomplish by the time of trial, nor is it feasible to move the

16  equipment.  *Id.*; *see also* ECF No. 203 at 82-83.

17        At this stage, the Court finds that Plaintiffs have failed to make a clear

18  showing to meet their burden that an imminent and substantial endangerment to

19  health may presently exist.  Adjudging all evidence before the Court, the Court finds

20  that harm is not imminent because there is no evidence that it is "threaten[ing] to

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 10

occur immediately" or that it is "present now." *Meghrig*, 516 U.S. at 485; *Price*, 39 F.3d at 1019. As to the substantiality requirement, an endangerment is substantial when it is "serious." *Cmty. Ass'n for Restoration of the Env't Inc. v. Cow Palace, LLC*, 80 F. Supp.3d 1180, 1227 (E.D. Wash. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1021 (10th Cir. 2007)).

Defendants continue to deploy significant protective measures to protect Hanford employees in conjunction with the TVAT Report recommendations. ECF No. 118 at 22-25. Defendants also voluntarily agreed to require supplied air within the tank farm fence perimeter, and have already tested and begun implementing the equipment that Plaintiffs request. In addition, and discussed with more particularity below, the requested 200 foot VCZ expansion is arbitrarily defined, not recommended by TVAT, and impractical. Plaintiffs concede that there have been no vapor exposures since the supplied air mandate, yet argue that Hanford employees will befall injury absent court intervention.

The Court does not deny that vapor exposures have occurred or that employees have experienced serious vapor-related illnesses. Defendants' arguments debunking and minimizing Hanford employees' health related claims are unpersuasive and belied by the record. *See* ECF Nos. 48 at 20-21; 75 at 6-10. Rather, the Court finds that given the preventative measures available and now mandated by the agreement of the parties, there is little to no chance of an imminent

1    and substantial endangerment present, requiring prohibitory injunctive relief.

2    Defendants have amply demonstrated that they are vigorously refining safety

3    measures, and there is no evidence that the supplied air mandate will be lifted

4    without a substitute, agreed upon by the parties.  Any threat that existed prior to

5    Defendants' remediation efforts and supplied air mandate no longer present an

6    imminent and substantial endangerment.  In addition, the Court finds that Plaintiffs

7    have failed to establish that the law and facts clearly favor their position to support a

8    200 foot VCZ expansion.  The Court concludes that Plaintiffs have not made a clear

9    showing that they are likely to prevail as to the relief sought under the RCRA at this

10   time given the record.

11       **B. Irreparable harm**

12       A violation of the RCRA does not automatically equate to a presumption of

13   irreparable harm, nor require the Court to grant an injunction.  *See Amoco Prod. Co.*

14   *v. Village of Gambell,* 480 U.S. 531, 542 (1987).  A party seeking preliminary

15   injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of

16   an injunction."  *Winters*, 555 U.S. at 22 (emphasis in original).  "Issuing a

17   preliminary injunction based only on a possibility of irreparable harm is inconsistent

18   with [the Supreme Court's] characterization of injunctive relief as an extraordinary

19   remedy that may only be awarded upon a clear showing that the plaintiff is entitled

20   to such relief."  *Id.*

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 12

Plaintiffs contend that Hanford employees will suffer irreparable harm because the vapor exposures that occurred between April and July 2016 are repetitive of similar incidents over the last few decades.  However, Defendants have submitted substantial evidence demonstrating that they have expended significant time and resources to address the TVAT recommendations, strengthened internal protocol, deployed new technologies to enhance vapor monitoring, and required supplied air until a suitable, safe alternative is achieved.  The Court finds that the evidence of Defendants' ongoing proactive measures, and lack of vapor exposures since the supplied air mandate, strongly support that Plaintiffs are not likely to suffer irreparable harm absent injunctive relief.  Rather their request is premised on the possibility of further harm, a harm they can voluntarily alleviate by using the available preventative measures.  *See Winters*, 555 U.S. at 22.

## C. The Balance of Equities

Courts must balance the hardship to the movant if the injunction is not issued against the harm the non-movant would suffer from a wrongfully-issued injunction. *See Winters*, 555 U.S. at 24; *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138 (9th Cir. 2009).

Plaintiffs contend that the balance of equities tilt strongly in favor of preventing harm to Hanford employees compared to the economic detriment that Defendants could face if the injunction were granted.  ECF No. 48 at 32-34.  Yet, the

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 13

1  Court need not even consider monetary cost to conclude that the balance of equities

2  do not tilt in Plaintiffs' favor.  First, mandatory SCBA use has been required since

3  August 3, 2016, and will continue under the MOA.  *See* ECF No. 125-1 at 28-29.

4  Plaintiffs are amenable to a less cumbersome protective respiratory substitute, by

5  shifting from SBCA to respirators, with one caveat:  Plaintiffs want to choose a third

6  party to determine that the shift can be safely accomplished.  However, Defendants

7  are tasked with determining how to safely and efficiently retrieve and dispose of

8  hazardous tank waste while simultaneously protecting Hanford employees.  Further,

9  Plaintiff Local 598 is a labor organization with more than 70 members who work at

10  Hanford.  *See* ECF No. 76 at ¶ 5.  Plaintiff Local 598 is also a member of HAMTC

11  and, therefore, Plaintiff has a voice at the table if and when an alternative supplied

12  air method is considered.

13      Second, Defendants have demonstrated that they have already evaluated and

14  begun implementing real-time vapor monitoring and detection methodologies

15  consistent with the remedy Plaintiffs seek.  *See* ECF No. 118 at 33-34, 52-53.

16  Despite significant efforts to test the VMD software, implementation of the VMD

17  software is impossible to accomplish by trial and impractical to move from one

18  waste-disturbing activity to another.  *See* ECF Nos. 118 at 54; 130 at 21; 203 at 82-

19  83.

20  //

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 14

1    Third, Defendants proffered evidence illustrating the significant impact to and

2  operational realities of a temporary VCZ expansion during waste-disturbing

3  activities vis-à-vis regulatory implications, inevitable work delay, training

4  requirements, infrastructure retooling, and employee reduction, among other

5  concerns.  *See* ECF No. 118 at 35-41.  Plaintiffs concede that a building exception

6  could be made to overcome the retooling impracticability.  A building exception,

7  however, would not eliminate the significant remaining challenges.

8    Balancing the interests of all parties and weighing the damage to each, the

9  Court concludes that any minimal risk of harm to employees (the possibility of

10  harm), given the current protections in place and Defendant's continued efforts to

11  address the TVAT recommendations, does not outweigh the concrete impediments

12  Defendants could face or the public consequence of delaying the tank waste transfer

13  remediation efforts.  A wrongfully-issued injunction would severely burden

14  Defendants, yielding speculative benefit, if any at all, to Hanford employees.  The

15  Court finds that balancing the equities clearly favors denying the injunction.

16    **D. Advancement of the Public Interest**

17    "In exercising their sound discretion, courts of equity should pay particular

18  regard for the public consequences in employing the extraordinary remedy of

19  injunction."  *Winters*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456

20  U.S. 305, 312 (1982)).  When the government is a party, the balance of hardships

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 15

1  and the advancement of the public interest are often seen to merge.  *League of*

2  *Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752

3  F.3d 755, 766 (9th Cir. 2014).  Regardless, the Court will not grant a preliminary

4  injunction unless the public interests in favor of granting an injunction "outweigh the

5  public interests that cut in favor of *not* issuing the injunction." *Alliance for the Wild*

6  *Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted) (emphasis

7  in original).

8        Here, the parties advance competing public interests.  The public

9  unquestionably has an interest in protecting the health and safety of individuals from

10 toxic vapors and protecting the environment.  The public also has a significant

11 interest in ensuring the expeditious completion of the tank waste transfer work to

12 protect individuals and the environment from irreversible damage attributed to

13 hazardous waste stored in leaking tanks.  *See* ECF Nos. 48 at 18-19; 118 at 12.  The

14 colossal clean-up work is, in essence, a critical race against the clock.  *See* ECF Nos.

15 118 at 62; 135 at 55-56.

16       The Court finds that Plaintiffs have not demonstrated that the public interest in

17 favor of granting the injunction outweighs the public interest supporting denial.  *See*

18 *Cottrell*, 632 F.3d at 1138.  The strong governmental interest, coupled with the

19 ensuing public consequence that results by unavoidably delaying remediation

20 efforts, strongly outweigh restructuring the Hanford Site infrastructure to alter the

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 16

VCZ during waste-disturbing activities.  *See* ECF Nos. 136 at 57, 118 at 35-41.  The Court also determines that Plaintiffs' proposed 200 foot expansion is supported by insufficient data, and the TVAT Report—of which *all* parties rely—does not recommend expansion.  *See* ECF Nos. 53-6; 118 at 33.  Without more, expansion is not warranted for a myriad of reasons.  Delaying the critical radioactive waste remediation work underway is a strongly determinative reason in favor of denying the injunction.  *See* ECF No. 203 at 39.

Finally, the Court is sensitive to the public interest in ensuring the safety of Hanford employees, but employees <u>are</u> currently protected by the SCBA mandate. Even without mandatory SCBA use, Hanford employees have always had the option of utilizing supplied air protection.  Whether or not employees took advantage of the use of supplied air for various reasons does not affect the Court's analysis. There is simply no credible evidence before the Court to suggest that the SCBA mandate will cease pending trial to merit injunctive relief now.

## CONCLUSION

In sum, the Court finds that all four factors weigh in favor of denying an injunction at this time.  Plaintiffs' requests for a preliminary injunction are **DENIED**.

//

//

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 17

Accordingly, **IT IS HEREBY ORDERED**:

1. The State of Washington's Motion for Preliminary Injunction (ECF No. 48) is **DENIED**;

2. The Citizen Plaintiffs' Motion for Preliminary Injunction (ECF No. 74, 75) is **DENIED**;

3. The United States' Motion to Strike Plaintiffs' Newly-Raised Evidence, or, Alternatively, for Leave to File Supplemental Declaration (ECF No. 193) and Motion to Expedite (ECF No. 194) are **DENIED as moot**.

4. Defendant Washington River Protection Solutions, LLC's Objection to Plaintiffs' Reply Memorandum and Other Evidence (ECF No. 192) and Motion to Expedite (ECF No. 191) are **OVERRULED and DENIED as moot**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** November 15, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTIONS TO STRIKE ~ 18